## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**JENNIFER HATHERLEY,**

**Plaintiff,**

**v.**

**RED LION HOTEL ("RLH") CORPORATION,**

**Defendant.**

## COMPLAINT AND JURY DEMAND

Plaintiff Jennifer Hatherley ("Hatherley" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant RLH Corporation, ("RLH" or "Defendant") and states as follows:

## NATURE OF ACTION

Plaintiff loyally served as an employee of RLH. Plaintiff brings this action for damages against Defendant as a result of Defendant's discrimination and retaliation against Plaintiff in violation of the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401, et seq., and Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352)("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.

## PARTIES

1. Plaintiff Jennifer Hatherley ("Hatherley") is a female citizen of the State of Colorado and. All the events and transactions upon which this suit is based occurred in the State of Colorado.

2. Plaintiff is a member of a protected class of individuals as defined by C.R.S. § 24-34-402 and Sec. 2000e-2(a)(1). Specifically, Plaintiff's gender is female.

3. Defendant is an employer as defined by C.R.S. § 24-34-401(3) and 42 U.S.C. § 2000e(b) with a principal office located at 1550 Market St., #530, Denver, CO 80202.

## JURISDICTION

4. Jurisdiction is asserted pursuant to the Title VII, 42 U.S.C. § 2000e, et seq. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, in that this action, in part, arises under federal law. This Court has personal jurisdiction over Defendant because Defendant is a resident of Colorado and pursuant to C.R.S. § 13-1-124 because Defendant transacts business in the State of Colorado.

## ADMINISTRATIVE HISTORY

5. Plaintiff has timely and properly exhausted her administrative remedies by filing an Initial Charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 541-2020-00184, on or about October 17, 2019, based upon grounds of gender discrimination, retaliation and failure to promote.

6. Plaintiff provided information to the EEOC alleging continued acts of discrimination against her, including repeated discriminatory comments and harassment by her supervisors, and that she believed she experienced a hostile work environment and was ultimately terminated.

7. This lawsuit is timely filed within 90 days after Plaintiff's receipt of a Notice of Right to Sue from the EEOC dated March 12, 2020.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates by reference her prior allegations.

9. Ms. Hatherley was hired by Defendant on or about July 27, 2015 as the Vice President of Digital Marketing.

10. During all relevant times Ms. Hatherley performed her duties in an above satisfactory manner. She was an exemplary employee and exceeded expectations as stated in every performance review Ms. Hatherley was given from 2015 through to her termination date in September 2020.

11. During her employment Ms. Hatherley received annual bonuses and stock rewards. She received no verbal or written complaints about her performance.

12. In or around August 2017, the Chief Strategy and Innovation Officer, a female, made a written complaint to Defendant that females were subjected to gender-based bullying.

13. In or around the Spring of 2018, Ms. Hatherley, and other female employees were referred to as "bitches" by the Chief Marketing Officer ("CMO"). After a formal written complaint was made, it was found that this CMO had previously referred to female subordinates as "bitches." Defendant took no action to stop this behavior.

14. In or around June 2018, Gary Sims ("Sims"), was hired as Defendant's Vice President & Chief Operating Officer.

15. During April and May of 2019 Defendant employed no Human Resource Manager and there were no Human Resources staff members.

16. In or around July 2018, a temporary Human Resources staff was put into place. However, this team reported directly to Sims.

17. Sims was dismissive of Ms. Hatherley, as well as other females. While in business meetings he would regularly cut females off, including Ms. Hatherley and look to a male to finish the discussion.

18. Ms. Hatherley was hesitant to file a complaint about being discriminated against by Sims because her complaints would be reported directly back to Sims.

19. In or around July 2019, Pat Schneider ("Schneider") was hired as the VP Head of Human Resources, People, and Culture. Schneider reported to Sims. Schneider read through the separation documents with Ms. Hatherley at the time of her termination, followed Simms orders to deny Ms. Hatherley's written and verbal requests to meet with the CEO or equivalent without Simms in attendance. Schneider was in attendance when Simms told Ms. Hatherley that she "*was not aloud* to speak with the CEO, email him or call him or anyone else" concerning Ms. Hatherley's complaints about discrimination and her subsequent termination.

20. At all relevant times during Ms. Hatherley's employment there were very few women in Senior and Executive management positions.

21. From January 2019 to the present zero females were hired at, or promoted to, the Senior Vice President or Executive Vice President level.

22. Upon information and belief, as of today, there are no women in Senior or Executive management positions.

23. Between October 2018 to September 2019, Sims regularly used a dismissive hand gesture with his back hand turned to cut off or dismiss women attempting to contribute during meetings. If a male employee contributed, he would lean in with his full attention.

24. On or about February 15, 2019, Ms. Hatherley was encouraged by Leslee Torres, the VP Chief Strategy and Commercial Officer and Head of Talent Acquisition, whom Ms. Hatherley reported to between 2018 and June 2019, to apply for a promotion to Senior Vice President Chief Digital Officer.

25. Defendant used a standardized interview process that include a series of interviews, often conducted on the same day over several hours to half a day, rotating through the defined hiring stakeholders. The male interviewees were then taken to lunch or additional panel interviews for extended conversations.

26. Ms. Hatherley confirmed her inclusion as a candidate with the internal recruiter, the Head of Talent Acquisition, sent in her resume, confirmed by the internal recruiter, and was scheduled for an interview, which was also confirmed by the Head of Talent Acquisition.

27. Ms. Hatherley's interview was scheduled with Sims. Ms. Hatherley arrived on time for her interview but when it was scheduled to start. Sims told her to sit outside his office where he proceeded to take a call delaying her interview by 15 minutes. Sims took two additional phones calls during Ms. Hatherley's interview with him.

28. Sims did not read Ms. Hatherley's resume prior to the interview. He had to dig through the papers stacked on his desk to retrieve her resume. He flippantly reviewed it during the interview.

29. Sims was very dismissive of Ms. Hatherley and made it clear that he had no intention of considering her for the position.

30. Instead of proceeding through the standard interview process and presenting Ms. Hatherley as a candidate to meet with the other stakeholders, Sims closed the interview by giving her

        an assignment that required her to present him with five "big" ideas to move the company forward and how to execute those five ideas. Upon information and belief, no male candidate was given this assignment.

31. Directly after the interview Ms. Hatherley c complained via text message with her manager about the interview and how Sims acted, and also the "homework assignment" Sims gave her.

32. Following the interview, Ms. Hatherley also asked the internal recruiter about her odd interview and was told that no other candidate was subjected to such questions or treatment.

33. Ms. Hatherley witnessed several male candidates arrive for interviews. It was clear that Ms. Hatherley was not accommodated with the same opportunities or rotation that the male candidates were.

34. Only 12% of the candidates for the position were female.

35. Sims made sure that Ms. Hatherley did not have the benefit of having any exposure to the other stakeholders. Ms. Hatherley was able to confirm with two other individuals included in the candidate interview process that other candidates were presented to the entire selection team and not filtered in the way Mr. Sims filtered Ms. Hatherley as a candidate. No other person conducting interviews knew she had even been interviewed.

36. Ms. Hatherley was told by her boss Leslee Torres, who was on the hiring team, that her name was never included as a candidate and that the Sims did not even mention he interviewed her. Ms. Torres also told Ms. Hatherley she was not aware of any other candidate receiving an assignment as part of the considerations process.

37. Ms. Hatherley was informed by her male colleague, who was a VP of Performance Marketing, that he had applied as well, went through an interview process with multiple stake holders and when he was eliminated he and another of Ms. Hatherley's peers were both asked by Mr. Sims to sit in on candidate interviews and provide feedback regarding the candidate selected. Both of Ms. Hatherley's male VP peers were included in the decision as to who would be selected for the position. Ms. Hatherley was excluded from the consideration team even though she and the two male peers would all be reporting into the new male Chief Digital Officer once selected. Ms. Hatherley's male peer confirmed Mr. Sims asked him to attend an interview of the selected candidate as the last step before that male was hired as both their future manager.

38. Plaintiff called the Defendant's internal recruiter, the Head of Talent Acquisition who had scheduled her the interview with Sims, and complained that she was treated differently during the entire interview process because she was a female. The internal recruiter simply replied that he "couldn't talk about it".

39. A male, Vinod Sankar ("Sankar") with several years less experience and fewer professional accolades in leadership positions than Ms. Hatherley was hired for the position.

40. Upon information and belief Sankar's experience and education were below Ms. Hatherley's own experience and education.

41. Ms. Hatherley became Sankar's direct report.

42. Sankar shared the same mannerisms towards females as Sims. He was disrespectful and discriminatory.

43. On current online professional biography Sankar has stated that if he had unlimited funds he would "Create a fund to help educate girl children."

44. Sankar was hired allegedly during a time of financial loss for Defendant.

45. When he was first hired Sankar had eight direct reports. In June of 2019 Mr. Sankar's reports grew. After Ms. Hatherley was terminated Sankar had 14 direct reports.

46. On or about September 11, 2019, Ms. Hatherley was terminated with the pretextual reason that her position was being eliminated due to a lack of work and her position as VP Head of Digital Marketing was no longer needed for the organization due to financial concerns.

47. Defendant had thirteen open positions when Ms. Hatherley was terminated. Upon information and belief, nine of those thirteen positions were for Sankar who was the hiring manager. Four of those nine positions were positions that were equivalent to Ms. Hatherley's eliminated position.

48. Ms. Hatherley filed another written complaint and stated that Defendant should audit the interview process and make sure it includes equal consideration for women candidates. Defendant did not respond.

49. The separation agreement the Defendant asked Ms. Hatherley to sign on the day of her terminations stated her position was being eliminated and at no fault of hers. However, withing 8 business days after her terminations, the Defendant posted her position, VP Head of Digital to recruiting sites, contradicting their statement about a lack of work.

50. Ms. Hatherley has learned that her position was recruited by the Defendant immediately after her termination and filled as of February 2020 by a male, Mr. Timothy Meskel, with less than half the experience of Ms. Hatherley.

51. From 2015 to 2020, only 25% of the Defendants executive and senior leader positions were held by woman. Between June 2018- present, the time Sims has held his position as COO, four woman executives have been terminated and zero male executives have been publicly documented as terminated.

## FIRST CAUSE OF ACTION
### Discrimination in Violation of Title VII
### (42 U.S.C. § 2000e-2(a))

52. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

53. Defendant is an employer as defined by 42 U.S.C. § 2000e(b).

54. Ms. Hatherley is a member of a protected class of individuals based on gender.

55. Ms. Hatherley was an employee as defined by Sec. 2000e(f), and at all times was qualified to perform the functions of her position.

56. Defendant willfully and intentionally subjected Ms. Hatherley to discrimination by making comments about her gender.

57. Defendant knew its actions violated Title VII or was recklessly indifferent in that regard.

58. As a direct and proximate result of the foregoing actions and conduct of Defendant, Hatherley has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience Ms. Hatherley also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Hatherley claims damages for these losses and injuries under 42 U.S.C. §1981a.

## SECOND CAUSE OF ACTION
### Hostile Work Environment – Harassment in Violation of Title VII
### (42 U.S.C. § 2000e-2(a))

59. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

60. Ms. Hatherley was subjected to harassing treatment because of her gender.

61. The comments and treatment Ms. Hatherley experienced were unwelcome.

62. The treatment was sufficiently severe and pervasive to alter the conditions of Ms. Hatherley employment and created an environment that was hostile.

63. Ms. Hatherley found the working environment to be hostile.

64. A reasonable person in Ms. Hatherley's circumstances would find the environment in which Ms. Hatherley worked to be hostile.

65. As a direct and proximate result of the foregoing actions and conduct of Defendant, Ms. Hatherley has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience. Ms. Hatherley also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Ms. Hatherley claims damages for these losses and injuries under 42 U.S.C. §1981a.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (42 U.S.C. § 2000e-3(a))

66. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

67. Ms. Hatherley engaged in protected activities by reporting discrimination that she experienced in the workplace because of her gender.

68. Defendant's conduct in subjecting Ms. Hatherley to the adverse employment actions of termination after she complained of discrimination are in violation of Sec. 2000e-3(a).

69. Ms. Hatherley further suffered an adverse employment action by being terminated after she faced retaliation for voicing concerns of discrimination.

70. The effect of these statutory violations was to deprive Ms. Hatherley of rights and privileges enjoyed by persons who have not engaged in activities protected by Title VII.

71. These statutory violations were intentional.

72. These statutory violations were willful and wanton, and/or were done with malice or with reckless indifference to Ms. Hatherley statutorily protected rights.

73. As a direct and proximate result of the foregoing actions and conduct of Defendant, Ms. Hatherley has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience. Ms. Hatherley also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Ms. Hatherley claims damages for these losses and injuries under 42 U.S.C. §1981a.

**FOURTH CAUSE OF ACTON**
**Discrimination in Violation of the Colorado Anti-Discrimination Act**
**(C.R.S. § 24-34-402(1)(a))**

74. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

75. Defendant is an employer as defined by C.R.S. § 24-34-401(3).

76. Hatherley is a member of a protected class of individuals based on gender as defined by C.R.S. § 24-34-402(1)(a).

77. Plaintiff was an employee as defined by C.R.S. § 24-34-401(2) and at all times was qualified to perform the functions of her position.

78. Defendant willfully and intentionally subjected Hatherley to discrimination by making comments about female employees.

79. Defendant knew its actions violated CADA or was recklessly indifferent in that regard.

80. As a direct and proximate result of the foregoing actions and conduct of Defendant, Hatherley has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience, Hatherley also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Hatherley claims damages for these losses and injuries under C.R.S. § 24-34-405.

### FIFTH CAUSE OF ACTION
### Hostile Work Environment – Harassment in Violation of the Colorado Anti-Discrimination Act
### (C.R.S. § 24-34-402(1)(a))

81. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

82. Ms. Hatherley was subjected to harassing treatment because of her gender.

83. The comments and treatment Ms. Hatherley experienced were unwelcome.

84. The treatment was sufficiently severe and pervasive to alter the conditions of Ms. Hatherley employment and created a hostile environment.

85. Ms. Hatherley found the working environment to be hostile.

86. A reasonable person in Ms. Hatherley's circumstances would find the environment in which Ms. Hatherley worked to be hostile.

87. As a direct and proximate result of the foregoing actions and conduct of Defendant, Ms. Hatherley has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience. Ms. Hatherley also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Ms. Hatherley claims damages for these losses and injuries under C.R.S. § 24-34-405.

### SIXTH CAUSE OF ACTION
### Retaliation in Violation of the Colorado Anti-Discrimination Act
### (C.R.S. § 24-34-402(1)(e)(IV))

88. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

89. Hatherley engaged in protected activities by reporting harassment that she experienced in the workplace because of her gender.

90. Defendant's conduct in subjecting Hatherley to the adverse employment actions of being threatened with termination after she complained about the discrimination is in violation of C.R.S. § 24-34-402(1)(e)(IV).

91. Hatherley further suffered an adverse employment action by being constructively discharged after she faced retaliation for voicing concerns of discrimination.

92. The effect of these statutory violations was to deprive Hatherley of rights and privileges enjoyed by persons who have not engaged in activities protected by CADA.

93. These statutory violations were intentional.

94. These statutory violations were willful and wanton, and/or were done with malice or with reckless indifference to Hatherley's statutorily protected rights.

95. As a direct and proximate result of the foregoing actions and conduct of Defendant, Hatherley has suffered, and will continue to suffer, economic damages including loss of back wages, front wages, and benefits, as well as non-economic damages including pain and suffering, humiliation, mental anguish, and inconvenience. Hatherley also seeks attorney's fees, costs and expenses, and other damages to be determined at trial. Hatherley claims damages for these losses and injuries under C.R.S. § 24-34-405.

## SEVENTH CLAIM
## Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, 2000e-5
## Disparate Treatment

96. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if set forth herein.

97. Ms. Hatherley was subjected to disparate treatment by her employer on account of her gender.

98. Ms. Hatherley was treated differently than similarly situated male employees. This treatment included being unduly scrutinized, unfair criticism, excluded from meetings, held to different standards, not being promoted, subjected to discriminatory statements, harassment, and termination.

99. Male employees were not subjected to the scrutiny, criticism, discriminatory treatment, harassment or termination as Ms. Hatherley

100. Defendant knew of the discrimination and failed to take immediate and appropriate remedial action.

101. Ms. Hatherley was fully qualified for continued employment by Defendant.

102. Defendant violated 42 U.S.C. §2000(a)(1) by the conduct described herein.

103. Ms. Hatherley is entitled to recover damages for the discriminatory conduct described herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5.

104. Ms. Hatherley suffered economic and non-economic damages as a result of such disparate treatment by the Defendant, including loss of wages, loss of future wages, loss of benefits, loss of future benefits, emotional distress, physical pain and suffering, medical expenses, loss of out of pocket expenses incurred to mitigate his damages, loss of future career advancement and statutory damages.

105. Ms. Hatherley is also entitled to recover her reasonable costs and attorneys' fees for bringing this action pursuant to 42 U.S.C. §2000e-5(k).

106. Defendant's unlawful conduct toward Ms. Hatherley in violation of Title VII was malicious and/or with reckless indifference to her federally protected rights, thereby subjecting Defendant to punitive damages as well.

## JURY DEMAND

Plaintiff requests a trial to a jury on all issues so triable.

WHEREFORE, Plaintiff Jennifer Hatherley prays for judgment against Defendant in an amount to be determined at trial, pre-judgment and post-judgment interest, costs and expert witness fees, and for such other and further relief as provided by statute and that the Court may deem proper.

DATED this 7th day of May 2020.

                         Respectfully submitted,

                         */s/ Sara A. Green*
                         Sara A. Green, Esq.
                         BACHUS & SCHANKER, LLC
                         101 W. Colfax Ave., Suite 650

Denver, Colorado 80202
Telephone: 303.893.9800
Facsimile: 303.893.9900
Sara.green@coloradolaw.net